### In re McGUIGAN.

### In re SMITH.

(District Court, N. D. New York. March 24, 1916.)

MARSHALING ASSETS AND SECURITIES ⬦4—BANKRUPTCY—PROCEEDINGS—DISTRIBUTION OF PROPERTY.

A bankrupt, who had already mortgaged his residence, acquired other property subject to mortgages, payment of which he assumed. Thereafter he gave a second mortgage on his residence to the mortgagee of the last-acquired property, subsequently selling such property to third persons, who agreed to pay the several mortgages, including the second one on

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his dwelling. *Held*, that on his bankruptcy, the bankruptcy court, being one of equity, would not, on foreclosure of the first mortgage on the bankrupt's dwelling, apply the surplus to the payment of the second mortgage, which had been assumed by the bankrupt's grantees, although after foreclosure by the second mortgagee, on failure of the grantees to discharge the mortgage, such surplus would be subject to payment of any deficiency.

[Ed. Note.—For other cases, see Marshaling Assets and Securities, Cent. Dig. § 4; Dec. Dig. ☞4.]

In Bankruptcy. In the matter of the bankruptcy of Patrick F. McGuigan. Application by Edward L. Smith, as trustee of the bankrupt, to continue an injunction against sale on foreclosure of property owned by the bankrupt, and, on the other hand, to vacate the injunction absolutely and allow a sale on foreclosure. Injunction ordered on condition.

This is an application on the one hand by Edward L. Smith as trustee in bankruptcy of the above-named bankrupt to continue an injunction against the sale on foreclosure of certain property owned by the bankrupt situate in the city of Utica, and on the other hand to vacate the injunction absolutely and allow a sale in foreclosure.

Henry F. & James Coupe, of Utica, N. Y., for holder of mortgage.
P. H. Fitzgerald, of Utica, N. Y., for trustee in bankruptcy.

RAY, District Judge. There is a slight difference between the trustee in bankruptcy and the owner of the mortgage now in process of foreclosure as to the amount due thereon, but there is no dispute as to the validity of the mortgage. The owner of the mortgage claims that the amount due is about $3,400 while the trustee asserts that the amount due is only about $3,200. There are some unpaid taxes, but this is included in the amount above stated.

The mortgaged property situate in Utica and covered by this mortgage sought to be foreclosed is concededly worth at least $5,000. The holder of this mortgage James H. McLoughlin as administrator, etc., of Mary F. McLoughlin, deceased, assignee of the mortgage, which was given to one Rosa F. Baechle July 17, 1905, to secure the sum of $3,000 is therefore perfectly secure and in no danger of loss. The mortgage is due, and he is entitled to his money at an early day. The trustee in bankruptcy can sell this property free and clear of all incumbrances under an order of this court and give a perfect title. The disposition of the surplus can await further proceedings. There are other facts and circumstances, however, which have a bearing on what ought to be done in the premises.

September 26, 1911, one Herbert E. Carter was the owner of a hotel property situate in the village of Chittenango, Madison county, N. Y., and on that day he conveyed same to Margaret McGarry and William H. McGarry, her husband, and they gave to Carter on that day a mortgage thereon for the sum of $2,000 which mortgage is past due. On the same day the McGarrys gave to the West End Brewing Company another mortgage, covering the same property, and also certain real estate in Utica, Oneida county, N. Y. (not that being foreclosed) to secure the payment of the sum of $3,000. This mortgage is past

due. November 11, 1912, the West End Brewing Company, in consideration of the sum of $500, released from the lien of said $3,000 mortgage the property situate in Oneida county, but the consideration received, $500, was not applied on the mortgage, but to the payment of an account for beer sold and delivered to the McGarrys. This was done by agreement between the West End Brewing Company and the McGarrys. On the 6th day of November, 1912, Margaret McGarry, then the owner of this hotel property in Chittenango, conveyed the same to Patrick McGuigan, now bankrupt, in consideration of the sum of $1, as recited in the deed, and McGuigan, in such conveyance, assumed and covenanted and agreed to pay with interest thereon from November 15, 1912, the said mortgage of $2,000, given to Carter and also assumed and covenanted to pay, with interest thereon from November 15, 1912, the said mortgage for $3,000, given to the West End Brewing Company. The assumption of these two mortgages by Patrick McGuigan was a part of the consideration for the conveyance to him. On the same day Patrick McGuigan gave to the West End Brewing Company a further mortgage of $2,000, covering not only the hotel property in Chittenango, but his house and lot in Utica, described in and covered by the mortgage to Rosa F. Baechle, and now owned by James McLoughlin, as administrator aforesaid. This mortgage of $2,000, given by McGuigan to the Brewing Company, thus became a second mortgage on the property in Utica owned by McGuigan, and also described in the Baechle mortgage now being foreclosed. There is a dispute and contest as to the amounts due on the $2,000 mortgage and the $3,000 mortgage given by the McGarrys, and there is no satisfactory proof as to the present value of the hotel property in Chittenango.

On the 4th day of November, 1914, said Patrick F. McGuigan, now bankrupt, contracted to sell the said hotel premises situate in Chittenango to Nelson Abbott and Ella B. Abbott, parties of the second part, in consideration of the sum of $8,000, which the Abbotts agreed to pay, and the agreement provided that the sale and conveyance was made subject to the mortgage for $2,000, given by the McGarrys to Carter, then held by a Dr. Jenkins of Auburn, N. Y., and also subject to the mortgage for $3,000, given by the McGarrys to the West End Brewing Company, and also subject to the mortgage of $2,000, given by McGuigan and wife to the West End Brewing Company. The Abbotts agreed to assume the payment of the said three mortgages, then amounting to $7,000, principal. Subsequently and January 2, 1915, a deed was given of this hotel property in Chittenango by the McGuigans to the Abbotts, and they now own, occupy, and possess the same In such deed the Abbotts assumed and covenanted and agreed to pay the said three mortgages as part of the consideration of the conveyance. The language of the assumption of the payment of these mortgages is:

"The parties of the second part [Abbotts] hereby assume and agree to pay, as part of the purchase price of said premises, the mortgages of $2,000.00 and $3,000.00 and $2,000.00."

Abbott and wife paid at that time $1,000, and the West End Brewing Company received it. The Abbotts have paid about $600 on these mortgages. The first mortgage on the Chittenango property is now held by Frank X. Matt, the president of the West End Brewing Company, and the other two mortgages for $3,000 and $2,000, respectively, are owned by that company. Abbott says he has paid about $200 on the principal of the mortgages assumed by him and his wife.

In equity and justice the Abbotts are to pay the $2,000 mortgage, which is now a lien on the house and lot in Utica, and which the plaintiff in the foreclosure action is now seeking to sell. If the Abbotts pay, or are held to pay as they ought, then this house and lot in Utica will be released from the lien of the $2,000 mortgage and the surplus over and above the mortgage now being foreclosed will go to the creditors of McGuigan. This ought to be the result, and this result ought to be brought about. Just how it shall be done and ought to be done it is not now necessary to determine, but it is perfectly plain that no part of the value of this house and lot in Utica should be eaten up in costs, and it is also evident that the trustee in bankruptcy should have the control of the sale thereof; the sale being fair and open and on due notice to all concerned. The surplus after paying the mortgage held by McLoughlin and the taxes should be deposited in court subject to the determination of the rights of the parties including the trustee in bankruptcy thereto. Clearly the West End Brewing Company should not have it applied on their mortgage at present for the benefit of the Abbotts and to the exclusion and injury of the creditors of McGuigan. Without so deciding it would seem but just and equitable that the West End Brewing Company should pursue its remedy by foreclosure against the Abbotts. If that company fails there, the surplus arising from a sale of the Utica property will be applicable to the payment of the balance of their claim. The court in bankruptcy is a court in equity, and so far as possible should do equity. It cannot exercise jurisdiction over the Chittenango hotel property, but it can protect the creditors of McGuigan to an extent at least.

Unless the trustee in bankruptcy stipulates the amount due on the mortgage held by McLoughlin as administrator and now in process of foreclosure, the foreclosure suit pending may proceed to judgment for the purpose of ascertaining and determining the amount due on such mortgage. If such stipulation is made so that there is no dispute between the trustee in bankruptcy and the administrator, then the plaintiff in the foreclosure action is absolutely enjoined and restrained from taking further proceedings in such foreclosure, but the trustee in bankruptcy is directed to at once advertise the Utica property so mortgaged for sale on 10 days' or two weeks' notice to be extensively given and to sell the same free and clear of all liens and incumbrances, and from the proceeds pay to the plaintiff in the pending foreclosure action the amount due on such mortgage, with interest to the date of payment, and from the proceeds of sale he will also pay all taxes due and unpaid assessed thereon. The question of the payment of costs in the foreclosure up to this date is reserved for further consideration. The

balance of the proceeds of such sale will be deposited in one of the depositories of this court by the said trustee in a special fund, taking the place of the real estate sold and the rights of the parties therein, and thereto will be hereafter settled and determined.

There will be an order accordingly.